IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES of AMERICA,

       Plaintiff,

vs.                                                                                                                          No. CR 16-0451 JB

MAYRA ALEJANDRA LOPEZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Appeal of Detention Order, filed April 11, 2016 (Doc. 25)("Appeal"). The Court held a hearing on April 15, 2016. The primary issue is whether repairing family relationships constitutes an "exceptional reason" to release Defendant Mayra Alejandra Lopez pending sentencing under 18 U.S.C. § 3145(c), which requires the Court to detain criminal defendants found guilty of certain offenses pending sentencing unless the defendant shows that "exceptional reasons" make the person's detention inappropriate. Because repairing family relationships does not constitute an "exceptional reason" under § 3145(c), the Court denies the Appeal and affirms the Honorable Laura Fashing, United States Magistrate Judge's detention order.

## FACTUAL BACKGROUND

On January 14, 2016, Drug Enforcement Agency ("DEA") Special Agent Jarrell Perry had a brief conversation with Lopez and asked to search her purse. See United States' Response to Appeal of Detention Order at 1, filed April 12, 2016 (Doc. 27)("Response"). Inside Lopez' purse, Perry found a bundle that tested positive for the presence of methamphetamine. See

Appeal at 1; Response at 1.  After being taken into custody and being read her rights, Lopez admitted that she was being paid to deliver drugs.  See Response at 1-2.

## PROCEDURAL BACKGROUND

On January 15, 2016, the United States charged Lopez with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), possession of more than 500 grams of a substance containing methamphetamine with intent to distribute.  See Criminal Complaint, filed January 15, 2016 (Doc. 2).  The Honorable Karen B. Molzen, United States Magistrate Judge, released Lopez to the custody of La Pasada Halfway House in Albuquerque, New Mexico.  See Order Setting Conditions of Release at 2, filed January 15, 2016 (Doc. 7).  Nearly three months later, on April 8, 2016, Lopez pled guilty before Judge Fashing to the Information charging her with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  See Plea Agreement, filed April 8, 2016 (Doc. 23).  After entering Lopez' guilty plea, Judge Fashing heard argument on Lopez' request to remain on conditions of release pending sentencing.  See Motion to Remain on Conditions of Release Pending Sentencing at 3, filed April 7, 2016 (Doc. 19)("Motion to Remain on Conditions of Release").

Lopez argued that she should be released to her mother's custody.  See Motion to Remain on Conditions of Release at 2-3.  She explained that her relationship with her mother has been strained for the past four years, but that her arrest facilitated communication with her mother again.  See Motion to Remain on Conditions of Release at 3.  Judge Fashing observed that 18 U.S.C. § 3145(c) requires her to detain Lopez pending sentencing unless Lopez establishes "exceptional reasons" why remand into custody is inappropriate.  Plea Minute Sheet at 1, filed April 8, 2016 (Doc. 24).  Judge Fashing found that Lopez did not pose a danger to the community or a flight risk, but concluded that Lopez had not established exceptional reasons

why she should not remain in custody. See Appeal at 2-3. Judge Fashing therefore denied Lopez' Motion to Remain on Conditions of Release. See Appeal at 3. Judge Fashing granted Lopez one week to turn herself into the United States Marshals Service's custody so that she could appeal the decision to detain her. See Appeal at 3.

In her Appeal, Lopez describes her good performance on supervision at La Pasada Halfway House. See Appeal at 2. She explains that her "pretrial services officer initiated an investigation of a possible release of her to the third party custody of her mother, Maria Olga Lopez, in San Bernardino, California, during the pendency of her case." Appeal at 2. She states that United States Pretrial Services found her mother "to be a suitable third party custodian" and recommended that she be released to her mother's custody. Appeal at 2. She argues that her request to spend time with her mother constitutes an exceptional circumstance, because it "represents a unique chance to repair a previously damaged relationship between mother and child and to eliminate the estrangement that formerly existed between them." Appeal at 3. Lopez contends that this unique circumstance, combined with her "exemplary performance for nearly three months while she was on pretrial supervision and her complete lack of criminal history," warrant her release. Appeal at 4. Lopez concedes, however, that Pretrial Services Officer Christopher Aguilar opposes Lopez' release to her mother's custody. See Appeal at 4-5.

In Response, the United States argues that Lopez "has not met her burden of clearly demonstrating there are exceptional reasons to justify her release pending sentencing." Response at 3. The United States provides a wide-ranging list of circumstances that courts have found unexceptional. See Response at 5-7. The United States contends that repairing her relationship with her mother is not an exceptional reason to remain out of custody. See Response at 8. It

acknowledges that Lopez' situation is "sympathetic" and "unfortunate," but nonetheless maintains that it is not exceptional.  Response at 8-9.

The Court held a hearing on March 14, 2016.  See Tr. of Hearing (taken March 14, 2016)("Tr.").[1]  Lopez noted that Judge Fashing found Lopez "neither a flight risk nor a danger to the community."  Tr. at 3:5-6 (Gonzales).  Lopez acknowledged that release pending sentencing "is rare."  Tr. at 5:17 (Gonzales).  In fact, she stated, she found only "one case that was close to home where release had been requested, granted and then upheld on appeal by the Tenth Circuit": United States v. Mutte, 383 F. App'x 716 (10th Cir. 2010).  Tr. at 5:18-21 (Gonzales).  Lopez compared her situation with the circumstances in United States v. Mutte, and argued that both she and the defendant there complied with their release conditions, had no criminal history, and had community ties.  See Tr. at 6:1-15 (Gonzales).  Furthermore, she argued that "renewing a relationship with her mother that had been broken for more than four years is exceptional.  And it does make her materially different from other defendants in her position."  Tr. at 8:1-5 (Gonzales).

The United States recognized that no cases have considered the situation whether repairing family relationships constitutes an exceptional reason under § 3143(c).  See Tr. at 10:20-23 (Han).  Despite the lack of precedent directly on point, however, the United States argued that numerous cases have held that "mere personal reasons, family hardships, things of that nature, are just not exceptional the way that 3145 intended it to be."  Tr. at 10:23-11:1 (Han).  The United States described some of the situations that courts have found unexceptional, including a defendant supporting young children or providing financial assistance for aging parents.  See Tr. at 11:2-6 (Han).  The Court agreed, observing that "this is not the kind of

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

exceptional circumstance that I think the case law or Congress intended." Tr. at 12:8-10 (Court). The Court therefore affirmed Judge Fashing's detention order and her decision to remand Lopez into custody pending sentencing.  See Tr. at 12:19-23 (Court).

## LAW REGARDING RELEASE PENDING SENTENCING

Under 18 U.S.C. § 3143(a)(2), the Court "shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained."  18 U.S.C. § 3143(a)(2).  When a defendant pleads guilty, this mandatory detention provision applies unless: (i) the United States recommends that no sentence of imprisonment should be imposed; and (ii) the Court finds by clear-and-convincing evidence that the defendant is neither a flight risk nor a danger to the community.  18 U.S.C. §§ 3143(a)(2)(A)(ii), (B).  Offenses falling under 18 U.S.C. § 3142(f)(1)(A) through (C) include cases that involve:

> **(A)** a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> **(B)** an offense for which the maximum sentence is life imprisonment or death;
>
> **(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

18 U.S.C. § 3142(f)(1).

If the defendant cannot meet § 3143's requirements, the only way a defendant may remain out of custody pending sentencing is by showing that there are "exceptional reasons why detention would not be appropriate," and by showing by clear-and-convincing evidence that he or she is not a flight risk or a danger to the community.  18 U.S.C. § 3145(c).  Section 3145(c) provides:

> **(c)** **Appeal from a release or detention order.** -- An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c).[2] Accordingly, in addition to showing that the defendant poses no danger to the community or flight risk, a defendant covered by § 3143(b) must show that there are exceptional reasons that make the person's detention inappropriate. See 18 U.S.C. § 3145(c); United States v. Jones, 979 F.2d at 805. A defendant bears the "burden of proof to clearly show exceptional circumstances" when seeking release pursuant to 18 U.S.C. § 3145(c). United States

---

[2]Notably, § 3145(c) refers expressly only to appeals from a release or detention order. See 18 U.S.C. § 3145(c). The Tenth Circuit has, however, decided that a district court may apply this subsection even when there is no appeal of a detention order. See United States v. Jones, 979 F.2d 804, 806 (10th Cir. 1992)(per curiam)(citing United States v. Herrera-Soto, 961 F.2d 645, 647 (7th Cir. 1992)(per curiam); United States v. DiSomma, 951 F.2d 494, 496 (2d Cir. 1991); United States v. Carr, 947 F.2d 1239, 1240 (5th Cir. 1991)(per curiam))("All the other circuits that have addressed the issue have ruled that the 'exceptional reasons' provision does apply to district courts. We now join those circuits and hold that a district court may consider whether exceptional reasons exist to release a defendant under 18 U.S.C. § 3145(c)." (citations omitted)). Once a jury has found a defendant guilty of an offense that triggers the § 3143(a)(2)'s provisions, a court may, under § 3145(c), order a defendant's release if a court finds that the defendant is not a danger or a flight risk, and there exists exceptional reasons to justify release. See 18 U.S.C. § 3145(c); United States v. Peterson, 185 F.3d 875, 1999 WL 407493, at *1 (10th Cir. 1999)(table decision)(unpublished); United States v. Kinslow, 105 F.3d 555, 556-57 (10th Cir. 1997)(stating that a defendant who sought release pending sentencing for a crime of violence must show by clear-and-convincing evidence that he was "not likely to flee or pose a danger to any other person or the community," and by "making a clear showing of exceptional reasons why his detention would not be appropriate"); United States v. Jager, No. 10-1531, 2011 WL 831279, at *18 (D.N.M. Feb. 17, 2011)(Browning, J.)("Once a court finds that a defendant meets the criteria of § 3143(a)(2), a court may order a defendant's release if a court finds that the defendant is not a danger and there exists exceptional circumstances to justify release.").

v. Rodella, 101 F. Supp. 3d 1075, 1133 (D.N.M. 2015)(Browning, J.)(citing 18 U.S.C. § 3145(c) and United States v. Bonczek, 2009 WL 2924220, at *2 (S.D.N.Y. Sept. 8, 2009)(Crotty, J.)).

Sections 3143 and 3145 do not define the phrase "exceptional reasons." See 18 U.S.C. §§ 3143, 3145. See United States v. Jager, 2011 WL 831279, at *18 (D.N.M. Feb. 17, 2011)(Browning, J.)("Section 3143 does not define 'exceptional reasons.'"). In determining what is exceptional under § 3145(c), courts have closely analyzed the "only useful historical document" on the issue: a letter from the Department of Justice to Senator Paul Simon, the provision's sponsor. The letter "propos[ed] the 'exceptional reasons' provision and suggest[ed] two hypothetical situations where it might apply." United States v. DiSomma, 951 F.2d at 497-98 (citing Letter from Assistant Attorney General Carol T. Crawford to Honorable Paul Simon (July 26, 1989)("Crawford Letter")). See United States v. Garcia, 340 F.3d 1013, 1016-17 (9th Cir. 2003)(same). The two situations in the Crawford Letter were:

> [F]irst, an elderly man with lifelong community ties, [who was] convicted under the federal murder statute of the mercy killing of his wife, challenges the applicability of that statute to mercy killings, a question of first impression in the circuit. The second example posited a seriously wounded drug dealer whose appeal raised a novel search and seizure issue which could change the outcome of his trial.

United States v. DiSomma, 951 F.2d at 497-98. As a whole, the Crawford Letter suggested that "exceptional reasons exist where, due to a truly unusual circumstance or combination of circumstances, it would be unreasonable, despite the general policy favoring incarceration contained in section 3145(c), to order a particular defendant to be incarcerated pending [sentencing or] appeal." United States v. Garcia, 340 F.3d at 1017.

Case law interpreting § 3145(c)'s provision has generally adhered to the Crawford Letter's principles. The Tenth Circuit has stated that "a unique combination of circumstances giving rise to situations that are out of the ordinary" must exist. United States v. Wages, 271 F.

App'x 726, 727 (10th Cir. 2008)(per curiam)(unpublished).  It noted that "exceptional reasons" means "being out of the ordinary: uncommon, rare."  United States v. Wages, 271 F. App'x at 727.  See United States v. DiSomma, 951 F.2d 494, 497 (2d Cir. 1991)(stating that exceptional circumstances are "a unique combination of circumstances giving rise to situations that are out of the ordinary," and finding that a defendant's status as a student, as employed, or as a first-time offender did not constitute exceptional circumstances).  Courts also generally agree that "a case by case evaluation is essential," United States v. Wages, 271 F. App'x at 727, and that the district court has "broad discretion . . . to consider all the particular circumstances of the case before it," United States v. Garcia, 340 F.3d at 1016-17 (observing that a "wide range of factors may bear upon the analysis").  Accordingly, the "Tenth Circuit . . . refrains from placing contours around the outer limits of the circumstances that may constitute 'exceptional reasons,' while finding that particular circumstances fail to meet that exception."  United States v. Westover, 2003 WL 22953091, at *1 (D. Kan. Nov. 13, 2003).

Following the Tenth Circuit's approach, the Court similarly provides guidance regarding what is "exceptional" by cataloguing what is not exceptional under § 3145(c).  The Court draws from its own experience sentencing criminal defendants in defining what is exceptional.  The Court sentences more than 100 defendants each year, often many more.[3]  In fact, the District of New Mexico sees more felony cases than any other federal district in the country, and more criminal cases than most courts in the country.[4]  See Criminal Cases Commenced, by Number of

---

[3]The Clerk of Court's internal statistical records approximate that the Court sentenced 156 criminal defendants in 2015, 180 defendants in 2014, and 134 defendants in 2013.

[4]In 2015 alone, 4,227 criminal cases were filed in the District of New Mexico.  See Criminal Cases Commenced, Terminated, and Pending (Including Transfers), During the 12-Month Periods Ending March 31, 2014 and 2015, JNET, Criminal Caseload Tables, http://jnet.ao.dcn/resources/statistics/caseload-tables/criminal-caseload-tables ("Criminal

Felony Defendants, Excluding Reopens, During the 12-Month Period Ending March 31, 2015, JNET, Criminal Caseload Tables, http://jnet.ao.dcn/resources/statistics/caseload-tables/criminal-caseload-tables (listing New Mexico as having the highest number of criminal cases involving felony defendants in the nation); Criminal Cases Commenced, Terminated, and Pending (Including Transfers), During the 12-Month Periods Ending March 31, 2014 and 2015, JNET, Criminal Caseload Tables, http://jnet.ao.dcn/resources/statistics/caseload-tables/criminal-caseload-tables.  After sentencing so many defendants and listening to their stories, the Court has some thoughts about what is not exceptional.  It is difficult to describe "exceptional" in the abstract without a finite context: it is, however, easier to say what is not "exceptional."

First, the aberrant nature of the criminal offense does not constitute an exceptional circumstance.  Specifically, a lack of criminal history is not exceptional.  See United States v. Wages, 271 F. App'x at 728; United States v. Lea, 360 F.3d 401, 403-04 (2d Cir. 2004)(concluding that "[t]here is nothing 'exceptional' about . . . being a first-time offender"); United States v. Larue, 478 F.3d 924, 925 (8th Cir. 2008)(per curiam)(finding nothing exceptional about a lack of criminal history); United States v. Ganadonegro, 2012 WL 1132166, at *5-6 (D.N.M. March 14, 2012)(Browning, J.)(same).  Similarly, complying with investigators and police is usually not exceptional under § 3145(c).  See United States v. Jager, 2011 WL 831279, at *4 (D.N.M. Feb. 17, 2011)(Browning, J.)(finding it unexceptional that a defendant "complied with investigators," and disclosed "his involvement with child pornography, allowing the investigators to search and seize his computer, and admitting that he had received and stored

---

Filings").  Only Arizona, with 5,059, and Texas' Southern and Western Districts, with 5,491 and 6,074, respectively, saw more criminal filings.  See Criminal Filings at 1.  In comparison, 98 criminal cases were filed in the District of Rhode Island, 128 were filed in Vermont, 116 were filed in the Northern District of Mississippi, 109 were filed in the Western District of Wisconsin, and 61 were filed in the Eastern District of Oklahoma.  See  Criminal Filings at 1.

child pornography"); United States v. Douglas, 824 F. Supp. 98, 99 (N.D. Tex. 1993)(Means, J.)(finding no exceptional reasons based upon "an agreement to cooperate with the government and testify at the trial" which subjected the defendant "to potential retaliation from his co-defendants"). Cf. United States v. Carretero, 1999 WL 1034508, at *8 (N.D.N.Y. Nov. 4, 1999)(Sharpe, M.J.)(denying release, but stating that it would not "foreclose the possibility that active cooperation which benefits the government, the defendants, and the societal goal of drug eradication may constitute an exceptional circumstance in an appropriate case"). Likewise, complying with pretrial release conditions and appearing at all court proceedings is not exceptional. See United States v. Larue, 478 F.3d at 925; United States v. Little, 485 F.3d 1210, 1210-11 (8th Cir. 2007)(stating that full compliance with pretrial release conditions and timely appearance at all court proceedings are not exceptional reasons). Finally, the defendant's commitment to avoiding crime in the future by undergoing treatment is insufficient. See United States v. Jager, 2011 WL 831279, at *19 ("Jager's participation in treatment is unexceptional."); United States v. Green, 250 F. Supp. 2d 1145, 1151 (E.D. Mo. 2003)(Webber, J.)("[I]t would be unfortunate for this Court to pronounce that achieving success in a drug rehabilitation program is an extraordinary or unique occurrence.")). In sum, a demonstrated history of complying with one's responsibilities and abiding by the law do not make a defendant's situation exceptional.

Second, the defendant's physical conditions, unless extremely irregular, will not often constitute an exceptional circumstance. See United States v. Wages, 271 F. App'x at 727 (finding it unexceptional where the defendant was fifty-three years old, used a wheelchair, needed a special mattress to avoid pain, and had a limited ability to hear); United States v. Brown, 368 F.3d 992, 993 (8th Cir. 2004)(per curiam)(concluding that the defendant's need to undergo treatment for depression was not exceptional); United States v. Rodella, 101 F. Supp. 3d

1075, 1130 (D.N.M. 2015)(Browning, J.)(concluding that the defendant's "poor health," even when combined with his need to provide for his family, was not "sufficiently exceptional to warrant release" when the defendant's health had not deteriorated since he had been imprisoned); United States v. Mellies, 496 F. Supp. 2d 930, 936-37 (M.D. Tenn. 2007)(Higgins, J.)(concluding that the defendant's need to continue extensive dental treatment was not exceptional); United States v. Lieberman, 496 F. Supp. 2d 584 (E.D. Pa. 2007)(Robreno, J.)(holding that the availability of experimental treatment in China for paralysis resulting from being shot by cohort during robbery was not exceptional). Notably, defendants can often continue treatment for most physical ailments in prison. See United States v. Rodella, 101 F. Supp. 3d at 1130 (noting that the "medical staff at any federal BOP facility can handle Rodella's health issues"); United States v. Rodriquez, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999)(Potter, J.)(noting that treatment is available in prison).

Third, the nature of the underlying crime is only rarely exceptional. It is not exceptional that the defendant poses little future danger to the community. See United States v. Rodella, 101 F. Supp. 3d at 1134-35 ("If a low risk of future violence was sufficient to warrant release of a violent offender, then every defendant who is convicted of a crime of violence would be released as long as he or she met § 3143(a)(2)(B)'s requirements, making § 3145(c)'s exceptional-circumstance's requirement meaningless."); United States v. Koon, 6 F.3d 561, 564 (9th Cir. 1993)(Rymer, J., concurring in the order denying the petition for rehearing en banc)(ruling that danger to the community is a predicate condition of § 3143(a)(1), and thus does not establish an "exceptional reason" absent some other factor making it extraordinary). The Court believes the better rule is to release a violent offender only when the violent act itself is exceptional, such that the defendant "may not be the type of violent person for whom Congress intended the mandatory

detention rule." United States v. Garcia, 340 F.3d at 1019.  The Court has previously opined on what acts may be exceptional:

> The Ninth Circuit gives three examples: (i) a violent act that did not involve any specific intent; (ii) a violent act that did not involve a threat or injury; and (iii) a mercy killing.  See United States v. Garcia, 340 F.3d at 1019.  Each of these examples are exceptional and do not involve defendants who would normally be considered violent.  If a defendant commits a violent act, but not with a specific intent, the defendant may not be a violent person and did not intend to commit the violent act.  Similarly, if a person committed a violent act that did not involve a threat or injury, the act may not truly be considered violent, considering no violence was done to another.  Additionally, a person who commits a mercy killing does not do so out of spite or ill will toward the victim, but out of compassion and a desire to help.  At least one district court has noted that a possessor of child pornography's action was exceptional when the defendant's action appeared to be "an aberrational act" that involved "a one-time out-of-character incident, precipitated by large quantities of pain medications [the defendant] was taking for a series of medical conditions" and when the defendant "stopped viewing such images a substantial time prior to the FBI discovering the images."  United States v. Syzmanski, No. CR 08–0417, 2009 WL 1212249, at *2-3 (N.D. Ohio Apr. 30, 2009)(Zouhary, J.).  Each of these examples involve a crime that is rare, uncommon, or out of the ordinary when compared with similar violent crimes.

United States v. Rodella, 101 F. Supp. 3d at 1134-35.  Nonetheless, the nature of the offense, without more, is not usually sufficient to constitute an exceptional reason under § 3145(c).  It is merely one factor that courts should consider when determining whether exceptional reasons exist.

Notably, however, the nature of the act might produce other consequences that weigh on exceptionality.  For instance, the crime for which a defendant is imprisoned might subject him or her to mistreatment in prison.  The United States Court of Appeals for the Eighth Circuit has held that the nature of the underlying crime does not usually present an exceptional circumstance, even when it might subject the defendant to mistreatment in jail.  See United States v. Brown, 368 F.3d at 993 ("[W]e do not see how Brown's case is 'clearly out of the ordinary, uncommon, or rare' when compared to every other defendant convicted of offenses involving the sexual

exploitation of children."). The Eighth Circuit noted, however, that it was only speculation whether the defendant's conviction might subject him to mistreatment and observed that the defendant "was not convicted of child abuse." 368 F.3d at 993. Similarly, when a defendant did not present any evidence that his safety was in jeopardy, other than a few threats from inmates who were physically separated from the defendant, the Court concluded that the situation was not exceptional. See United States v. Rodella, 101 F. Supp. 3d at 1136 (noting that "[i]ncarceration is inherently dangerous").

Fourth, detention's effect on the defendant's employment or status as a student does not make the situation exceptional. See United States v. Lea, 360 F.3d at 403-04 (concluding that "[t]here is nothing 'exceptional' about going to school"). Detention prevents every defendant from maintaining employment. Fifth, a defendant's prior military service is not usually an exceptional circumstance. See United States v. Jager, 2011 WL 831279, at *18-19. Moreover, even when detention affects a defendant's eligibility for lifelong disability benefits resulting from military service, the situation may be unexceptional. See United States v. Jager, 2011 WL 831279, at *18-19 ("If, however, Jager is taken into custody immediately after sentencing, . . . Jager will be ineligible for a disability rating and lifelong disability benefits."). The Court found such a situation unexceptional when the defendant would still be "eligible for Veteran's Administration medical benefits and disability benefits until he is taken into custody after sentencing." United States v. Jager, 2011 WL 831279, at *17.

Finally, detention's effect on a defendant's family, without more, is often insufficient. See United States v. Velarde, 555 F. App'x 840, 841 (10th Cir. 2014)(per curiam)(stating that "the cases establish that mere personal reasons, including caring for a family or gainful employment, are not 'exceptional'"). The Tenth Circuit has explained that "familial hardship

and disruption to an individual's educational or professional affairs are the natural, if unfortunate, consequences of finding oneself at the mercy of the criminal justice system." United States v. Velarde, 555 F. App'x at 841.  Accordingly, detention's effect on the defendant's reputation, and his or her family's reputation, is not exceptional.  See United States v. Ganadonegro, 2012 WL 1132166, at *5-6 (finding it unexceptional that detention would impair the defendant's and the defendant's family's reputation).  Likewise, detention's effect on a defendant's ability to care for his or her family, without more, is not usually exceptional.  See United States v. Wages, 271 F. App'x at 727 (finding it unexceptional where the defendant, who was middle-aged and suffered from his own physical ailments, had to care for his elderly mother); United States v. Rodella, 101 F. Supp. 3d at 1136-37 (finding it unexceptional when detention would place a strain on the defendant's mother, his wife, and his grown children); United States v. Wright, 2009 WL 87604, at *3 (D. Utah Jan. 12, 2009)(Stewart, J.)(holding that a defendant's need to care for his elderly mother, who suffered from emphysema, was not an exceptional reason); United States v. Mellies, 496 F. Supp. 2d at 937 (concluding that the defendant's need to care for his aging parents, who suffered from various medical problems, was not exceptional); United States v. Green, 250 F. Supp. 2d at 1150-51 (finding it unexceptional that detention would prevent the defendant from being able to provide for his nine children); United States v. Lippold, 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001)(Sweet, J.)(finding it unexceptional that the defendant would be unable to care for his "three young children whom he supports financially," including his seven-month old son suffering from Bell's Palsy); United States v. Burnett, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999)(noting that "incarceration regrettably inflicts family hardship on many, if not most, defendants" and that "personal family hardships are very common and occur in a great number of cases"); United States v. Scott, 1995

WL 723752 (E.D. Tex. Nov. 22, 1995)(concluding that the need to assist an infirm parent, including contributions from employment, were not exceptional); United States v. Mahabir, 858 F. Supp. 504 (D. Md. 1994)(concluding that incarceration's disruption of the family was unexceptional); United States v. Taliaferro, 779 F. Supp. 836 (E.D. Va. 1992)(concluding that it was unexceptional that the defendant's daughter was in the midst of a difficult pregnancy).

Although Congress' mandate may produce unfortunate family situations, such is the case with every defendant facing a custodial sentence. There may be situations, however, that produce unusually severe effects on defendants and their families. When these situations combine with the various other factors listed above, an exceptional circumstance may arise. Accordingly, when "detention imposes an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration," United States v. Green, 250 F. Supp. 2d at 1150, combined with other factors that make the situation truly unusual, the circumstance may truly be exceptional. See United States v. Reyes, 9 F. Supp. 3d 1196, 1213 (D.N.M. 2014)(Browning, J.)(finding it exceptional, when the "United States suggested that it would not oppose release if the Court were to find exceptional circumstances," that the defendant "has a new, young child for whom she must care," coupled with her good performance on pretrial release, but noting that "it might come to a different decision if it had more time to consider the issue"). The Court believes that an exceptional family situation may arise "when the defendant is raising small children by himself or herself, and the children have special needs for which only the defendant can provide." United States v. Rodella, 101 F. Supp. 3d at 1137. Without such unusual circumstances, the Court will not find an exceptional reason to release the defendant pending sentencing under § 3145(c).

## ANALYSIS

Lopez pled guilty to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), which is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(f)(1)(C). Because the United States is seeking a term of imprisonment, § 3143's mandatory detention provision applies unless: (i) the Court finds by clear and convincing evidence that Lopez is neither a flight risk nor a danger, see 18 U.S.C. § 3143(a)(1); and (ii) Lopez "clearly show[s] that there are exceptional reasons why detention would not be appropriate," 18 U.S.C. § 3145(c). Lopez has not shown any exceptional reasons justifying her release pending sentencing. The Court therefore denies Lopez' Appeal and affirms Judge Fashing's decision to remand Lopez into custody.

### I.     LOPEZ IS NOT A FLIGHT RISK OR A DANGER TO THE COMMUNITY.

The United States acknowledges that there are conditions that will reasonably assure the safety of others and the community, and that will ensure Lopez appears at all hearings. See Response at 8. The United States further concedes that Lopez has "complied with the conditions of release imposed on her . . . and has no reason to believe she will become non-compliant in the weeks to come." Response at 8. The Court agrees and concludes that Lopez is neither a flight risk nor a danger to the community. Nevertheless, because Lopez pled guilty to a drug trafficking offense that requires detention pending sentencing where the United States seeks a term of imprisonment, she must also establish exceptional reasons justifying her release pending sentencing.

### II.    LOPEZ HAS NOT SHOWN EXCEPTIONAL REASONS TO JUSTIFY HER RELEASE PENDING SENTENCING.

Lopez concedes that "many people have family who will miss them and who will suffer because they are gone." Tr. at 8:7-8 (Gonzales). Nevertheless, she considers it rare that

"possible imprisonment actually serves as a catalyst for rebuilding a relationship that had formerly been good." Tr. at 8:11-14 (Gonzales). The Court disagrees on two levels. First, prison -- or the threat of imprisonment -- acts as a catalyst to reunite many criminal defendants with their families. When the Court is about to sentence a defendant, it reads letters from the defendant's family that explain to the Court that the defendant is a changed man or woman. The defendant will often tell the Court that he or she now realizes how important his or her children or family are. Lopez' situation, while unfortunate, is not unique. Second, as the case law demonstrates, repairing family relationships is not a reason that Congress considered exceptional when it wrote § 3145(c). See United States v. Velarde, 555 F. App'x at 841 (concluding that a defendant's need to resolve family and business matters before going to prison is not an exceptional reason under § 3145(c)); United States v. Rodella, 101 F. Supp. 3d at 1133-37 (concluding that the defendant's health and family situation were insufficient reasons to warrant release). As explained above, to be exceptional for family reasons, detention must impose "an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration," United States v. Green, 250 F. Supp. 2d at 1150, combined with other factors that make the situation truly unusual, see United States v. Reyes, 9 F. Supp. 3d at 1213.

Lopez points to no extreme hardships. She merely wants to repair her relationship with her mother. See Appeal at 3 ("What makes Ms. Lopez's request exceptional is that the opportunity to spend time with her mother represents a unique chance to repair a previously damaged relationship . . . ."). Although repairing this relationship is admirable and may produce good consequences in the future, if the Court deemed Lopez' reason exceptional here, the exception would swallow the rule. There are countless defendants with relationships they would like to mend. Moreover, § 3145(c) does not seek to release defendants pending sentencing when

release will have potentially good consequences. It requires the situation to be "exceptional." 18 U.S.C. § 3145(c). Detention's effect on Lopez' relationship with her mother is insufficient to warrant release pending sentencing, even when combined with Lopez' good performance on pretrial supervision, her lack of prior criminal history, and her offense's aberrational nature. Because Lopez' situation is not exceptional under § 3145(c), the Court denies her Appeal and affirms Judge Fashing's detention order.

**IT IS ORDERED** that the Appeal of Detention Order, filed April 11, 2016 (Doc. 25), is denied, and the Honorable Laura Fashing, United States Magistrate Judge's detention order is affirmed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Edward Han
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Benjamin Gonzales
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*